Foster, J.
The establishment of a centralized school district is primarily a legislative matter. The Legislature, however, has delegated its power in that respect to the Commissioner of Education and the qualified voters of a proposed district. The commissioner lays out the territory and the voters therein decide whether or not the central school district shall be established (Education Law, former § 183, now § 1804).
In. this case the representatives of one of twenty-eight districts comprising the centralized area claim that their district was led to support the centralized scheme upon the representation that after the central district was formed their district would be taken away and attached to another educational division of the State. The Commissioner of Education has called for a vote of the residents of this district to ascertain their sentiment as to such a transfer. The Board of Education of the centralized district has characterized the proposal for a possible transfer of the single district mentioned, under the circumstances, as a fraud on the voters of the centralized district, and asserts that the commissioner has not the power to alter the boundaries of a central district in the manner proposed.
In the first place the detachment or transfer' stage has not yet been reached, and in my view the present litigation is therefore premature. But as to the ultimate issue, viz., the power of the commissioner, I have no doubt that he may, at least indirectly, direct the alteration of the boundaries of central districts. The alteration of school district boundaries, and the statute makes no distinction as to particular districts, may be done by order of district superintendents (Education Law, former §§ 123, 124, now §§ 1507, 1508). If the district superintendents fail or refuse to act, an appeal lies to the commissioner under former section 890 (now § 310), and the commissioner has the power to direct them to act if he adjudges it a proper case. And for that matter the commissioner may initiate a proceeding *679 'Mmself to compel the district superintendents to act if he is 'advised that such a procedure is necessary and proper,
j All those involved in the present proceeding were charged with notice of these statutory provisions at the time the central district was formed and hence they cannot successfully urge now that the commissioner is without power to act. Presumably, before deciding to exercise his power he has asked for a vote by the residents of the single district to ascertain their sentiment. What he may do thereafter is still problematical, but I think under his general and all-embracive supervisory powers he has the absolute right to ascertain the sentiment of the voters of the district.
I The methods followed may be distasteful, but there are two sides to that phase of the matter. In view of the two inconsistent petitions filed out of a single district, one signed by sixty-four people asking to be included in the centralized district, and the second petition signed by some ninety people asking that the application be rejected, both petitions being signed in some instances by the same people, it is evident that the question of whether the single district should be included or excluded was a troublesome question. The representations made by Harris may have been unfortunate, but in my opinion the issue of fraud has been greatly magnified. And moreover, I doubt very much if the courts have a right to interfere solely on the issue of method in a case where the commissioner has ultimate power.
I vote to affirm the order at Special Term.